UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JASON GILLIAM,                    :
    Plaintiff,                    :
                                  :
VS.                               :      Civil No. 3:03CV1201 (AVC)
                                  :
TOWN OF WINDSOR LOCKS,            :
JOSEPH OLIVEIRA, JR.,             :
DAVID PROVENCHER,                 :
    Defendants                    :

**<u>RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

This is an action for damages brought pursuant to 42 U.S.C. §1983, alleging violations of the Fourth Amendment to the United States Constitution.  The action also seeks damages based on the Connecticut constitution and common law precepts concerning assault and battery, negligent assault, recklessness and maliciousness, intentional and negligent infliction of emotional distress, and negligence.

This action is brought by the plaintiff, Jason Gilliam, who alleges that the defendant, Joseph Oliveira, Jr., a Windsor Locks police department officer, violated his constitutional right when he used excessive force against him.  In addition, the complaint alleges that the defendant, David Provencher, also a Windsor Locks police department officer, failed to intervene to prevent Oliveira from using excessive force against him.  Further, the complaint alleges that Windsor Locks is liable for Oliveira and Provencher's negligent acts or omissions and claims indemnity from Windsor Locks for the officers' negligent acts.

Oliveira and Provencher, in their official and individual capacities, and the Town of Windsor Locks now move for summary judgment pursuant to Fed. R. Civ. P. Rule 56(c).

The issues presented are: 1) whether the excessive force claim fails because Oliveira's use of force was objectively reasonable under the circumstances; 2) whether the bystander liability claim fails because Oliveira's use of force was reasonable and therefore Provencher had no duty to intervene; 3) whether Oliveira and Provencher are entitled to qualified immunity against Gilliam's constitutional claims; 4) whether the assault and battery claim fails because Oliveira's use of force was reasonable and therefore justified under Connecticut law; 5) whether the intentional infliction of emotional distress claim fails because Oliveira and Provencher's acts and omissions were not extreme and outrageous; 6) whether the negligent infliction of emotional distress claim fails because Gilliam did not demonstrate that there was an unreasonable risk of emotional distress or that he suffered any illness or bodily injury as a result of Oliveira's actions; and 7) whether the state law claims are barred by the doctrine of governmental immunity.

For the reasons hereinafter set forth, the court concludes that: 1) the excessive force claim does not fail because a jury could find that Oliveira's use of force was not objectively reasonable when Gilliam provided no resistance and complied with

all of his instructions; 2) the bystander liability claim does not fail because Gilliam raises a genuine issue of material fact as to whether or not Oliveira's use of force was reasonable; 3) the constitutional claims do not fail because there is a genuine issue of material fact as to whether or not it was objectively reasonable for Oliveira and Provencher to believe that they were not violating Gilliam's constitutional rights; 4) the assault and battery claim does not fail because a jury could conclude that Oliveira's use of force was not reasonable; 5) the intentional infliction of emotional distress fails because Gilliam did not provide evidence to support that Oliveira's actions caused him severe emotional distress; 6) the negligent infliction of emotional distress claim fails because Gilliam failed to show that the distress he experienced was reasonable in light of Oliveira and Provencher's conduct; and 7) only the state law claims based on negligence are barred by the doctrine of governmental immunity.

The motion for summary judgment is therefore GRANTED in part and DENIED in part.

## **FACTS**

Examination of the complaint, affidavits, pleadings, Local Rule 56(c) statements, exhibits and supplemental materials accompanying the motion for summary judgment, and the responses thereto, disclose the following undisputed, material facts.

3

Gilliam resides at 99 Oak Street, Windsor Locks, Connecticut.  On August 8, 2001, at approximately 3:13 p.m., the Windsor Locks police department dispatched Oliveira and Provencher to 99 Oak Street in response to a domestic violence complaint.  As Oliveira approached Oak Street, he identified Gilliam, who was walking down Oak Street. Oliveira asked Gilliam to take a seat in the back seat of his police cruiser and accompany him to 99 Oak Street.  Gilliam complied.  Gilliam entered the back seat of the cruiser under his own control and without handcuffs.

Upon arrival at 99 Oak Street, Oliveira met with Provencher. Oliveira and Provencher both assert that they had knowledge that Gilliam had a history of mental health issues and that he had been arrested a number of times by the Windsor Locks police department.

Oliveira kept Gilliam locked in the back seat of the police cruiser while he and Provencher entered the residence to investigate the complaint.  Gilliam claims that the outside temperature was ninety-eight degrees.  Although Oliveira kept the cruiser running with the air conditioning on, Gilliam claims that the glass partition between the front and back seat did not allow the cool air to reach the back seat.  Oliveira left the rear windows lowered by no more than an inch.  Gilliam alleges Oliveira left Gilliam locked in the cruiser for approximately

forty-five minutes, during which time he began to feel claustrophobic, anxious, and nervous.

While questioning Gilliam's girlfriend, one Melanie Bassett, and Gilliam's mother, one Marge Gilliam, about the complaint, Oliveira and Provencher heard banging from outside.  Oliveira and Provencher contend that Provencher investigated the noise and reported to Oliveira that Gilliam was banging on the window of the car with his fists.  Gilliam claims that Provencher did not come out and investigate the noise, and denies banging on the window.

Oliveira determined there was sufficient probable cause to arrest Gilliam based on Melanie Bassett's statements that Gilliam verbally abused her.  Oliveira and Provencher went out to the cruiser and asked Gilliam to step out of the cruiser.  Oliveira and Provencher assert that Gilliam refused to step out of the cruiser. Gilliam argues that Oliveira, in Provencher's presence, dragged Gilliam out of the cruiser by his neck and throat, stating to Gilliam that he was a "fucking asshole" and a "stupid mother fucker."

In their answer, Oliveira and Provencher admit that once Gilliam was out of the cruiser, he followed the officers' instructions.  However, Oliveira and Provencher maintain in their affidavits that Gilliam did not comply with their commands and

resisted being handcuffed by squirming around and using profanities.

Gilliam asserts that when Oliveira told Gilliam to put his arms behind his back, Gilliam complied and did not resist. Gilliam argues that despite his compliance with the officers' instructions, he had to tell Oliveira to put the handcuffs on him because Oliveira was too busy assaulting him. Gilliam further argues that Oliveira then forcefully pushed his arms up extremely high on his back causing him extreme pain to his shoulders and arms, pushed him against the side of the cruiser causing injury to his chest, and grabbed him by the neck and throat, applied pressure, and threw him into the cruiser. Oliveira never searched or patted Gilliam down. During this time, Gilliam claims that Provencher did not step in until he assisted Oliveira in putting Gilliam back into the cruiser.

Once Gilliam was handcuffed and put into the police cruiser, Provencher continued on patrol and Oliveira drove Gilliam from 99 Oak Street to the Windsor Locks police station. Gilliam claims that on the way to the station, Oliveira intentionally sped up the police cruiser and abruptly hit the brakes approximately five or six times, causing him to smash his head against the glass partition. As a result, Gilliam became extremely anxious about his physical safety and began kicking the passenger side rear window of the cruiser. Oliveira asserts that he stopped the

cruiser multiple times in response to Gilliam's kicking the window.

Gilliam claims that upon arrival at the police station, he did not provide any resistance.  Gilliam argues that despite this, Oliveira grabbed Gilliam by his neck and handcuffs, threw him to the cement ground, and pushed Gilliam's chest and shoulders into the ground with extreme force.  The right side of Gilliam's face also struck the floor.  Gilliam claims Oliveira then physically placed him on his feet by grabbing his handcuffs and jerking the handcuffs up behind his back and threw him against the wall of the station. Oliveira disputes this and asserts that when Gilliam was asked to get out of the cruiser, Gilliam refused to comply and leaned back in the seat.  Concerned that Gilliam was going to kick him, Oliveira partially pulled Gilliam out of the cruiser by his legs and then grabbed Gilliam by his shirt and walked him into the station.  Provencher stated in his affidavit that he was present at the station and witnessed Oliveira remove Gilliam from the vehicle.

An officer at the station, one officer Bowen, processed Gilliam without incident and put him into a cell.  While he was in the cell, Gilliam hit the walls and the light with his hands. As a result, Bowen and Oliveira moved Gilliam into a padded cell. Upon his request, one sergeant Koistinen later took Gilliam to John Dempsey Hospital in Farmington, Connecticut.

Gilliam spent the following seven days at Dempsey Hospital for mental health treatment. Gilliam has a history of mental illness and had not been compliant with his medication for six months. Hospital records reflect that police brought Gilliam to the hospital for suicidal ideation and, during his initial psychiatric consultation, Gilliam expressed that he had been suffering from depression and anxiety for nine months and recently had thoughts of jumping off a bridge or overdosing on medication.  Dr. Kevin Sevarino diagnosed Gilliam with bipolar disorder upon discharge.  Gilliam claims that as a result of Oliveira's conduct, he has lost sleep, has become apprehensive, and suffers from undue mental and emotional distress.

The hospital records state that in the initial diagnostic evaluation, Gilliam explained that he got into a fight with his girlfriend and that she kicked him in the right leg, scratched his neck, and hit him in the left forearm.  The neurological examination showed evidence of bruising on Gilliam's right upper chest and his shoulders, swelling on his central and right forehead, and bruising and scratch marks on his left arm. Gilliam claims Oliveira caused these injuries.

## STANDARD

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment

8

as a matter of law.  Fed. R. Civ. P. 56(c).  In determining
whether the record presents genuine issues for trial, the court
must view all inferences and ambiguities in a light most
favorable to the non-moving party.  See Bryant v. Maffacci, 923
F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  A
plaintiff raises a genuine issue of material fact if "the jury
could reasonably find for the plaintiff." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 252 (1986).  Rule 56 "provides that
the mere existence of some alleged factual dispute between the
parties will not defeat an otherwise properly supported motion
for summary judgment; the requirement is that there be no genuine
issue of material fact." Liberty Lobby, 477 U.S. at 247-48
(emphasis omitted).  The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only
> for the rights of persons asserting claims and
> defenses that are adequately based in fact to have
> those claims and defenses tried to a jury, but
> also for the rights of persons opposing such
> claims and defenses to demonstrate in the manner
> provided by the Rule, prior to trial, that the
> claims and defenses have no factual basis.

Celotex v. Catrett, 477 U.S. 317, 327 (1986).  "One of the
principal purposes of the summary judgment rule is to isolate and
dispose of factually unsupported claims . . . [and] it should be
interpreted in a way that allows it to accomplish this purpose."
Id. at 323-24.

## DISCUSSION

1.    Officer Oliveira and Excessive Force

Oliveira first moves for judgment as a matter of law with respect to the claim that, during Gilliam's arrest, Oliveira used excessive and unreasonable force against him.  Specifically, Oliveira asserts that, given his knowledge of Gilliam's mental health issues and prior arrests, in conjunction with Gilliam's "acts of violence" and resistance, the amount of force he used was objectively reasonable under the circumstances.  Further, Oliveira argues that the absence of any significant physical injury to Gilliam confirms that the amount of force used was reasonable.

Gilliam responds that there are genuine issues of material fact as to whether or not Oliveira's use of force was objectively reasonable.  Specifically, Gilliam claims he did not resist arrest at any point in time.  Gilliam also claims that he sustained injuries as the direct result of Oliveira's use of excessive force.

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures."  U.S. Const. amend. IV.  All claims that law enforcement officers have used excessive force in the course of an arrest, invoking the protections of the Fourth Amendment, are to be analyzed under an "objectively reasonable" standard.

10

Graham v. Connor, 490 U.S. 386, 395, 397 (1989).  The relevant inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397 (citing Scott v. United States, 436 U.S. 128, 137-39 (1978)).

Reasonableness must be judged from the perspective of a "reasonable officer on the scene" and in consideration of the facts and circumstances of each particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.  Courts should be mindful that the "right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" and that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation."  Id. at 396-97.

A jury could reasonably conclude that Oliveira's use of force was not objectively reasonable because a "reasonable officer on the scene" would not find cause to use this amount of force under these circumstances.  Id. at 396.  If Gilliam's version of events is accepted, as it must be for purposes of

11

ruling on a motion for summary judgment, a jury could find that Oliveira forcefully grabbing, pushing, and throwing Gilliam around in the absence of any resistance was not objectively reasonable.  Although Oliveira asserts that he had knowledge of Gilliam's mental health issues and arrest record, that knowledge alone does not make such a forceful arrest reasonable.

Oliveira also asserts that he had concerns that Gilliam was attempting to escape the cruiser when he kicked out the window, but taking the facts in the light most favorable to the nonmoving party, according to Gilliam, he did not start kicking the window until after Oliveira intentionally caused him to be flung against the glass partition several times and he became extremely anxious.

For these reasons, the court cannot say that Oliveira's use of force was objectively reasonable.  Therefore, Oliveira is not entitled to judgment as a matter of law.

2.   <u>Officer Provencher and Bystander Liability</u>

Provencher moves for summary judgment with respect to the claim that Provencher failed to intervene in Oliveira's use of excessive force.  Specifically, Provencher asserts that the duty to intervene was not triggered because Oliveira did not use unreasonable force.

Gilliam responds that Oliveira used excessive force against

him and Provencher did not fulfill his duty to intervene and
protect him against assault and abuse.

Law enforcement officers have "an affirmative duty to
intervene to protect the constitutional rights of citizens from
infringement by other law enforcement officers in their
presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)
(citing O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988)).
Bystander liability attaches to an officer who fails to intervene
when "the officer observes or has reason to know: (1) that
excessive force is being used; (2) that a citizen has been
unjustifiably arrested; or (3) that any constitutional violation
has been committed by a law enforcement official." Id. (internal
citations omitted).  Whether an officer had sufficient time to
intervene or was capable of preventing the harm caused by another
officer is a question of fact for a jury, unless a reasonable
jury could not possibly conclude otherwise.  Id.

A reasonable jury could find that Oliveira used excessive
force and Provencher was both capable of and had sufficient time
to prevent the use of such force.  Based on the facts in the
light most favorable to Gilliam, Provencher had several
opportunities to intervene because he was on the scene at all
times and in close proximity to both Oliveira and Gilliam during
Gilliam's arrest at 99 Oak Street, but failed to do so.

13

Therefore, Provencher's motion for summary judgment as to the bystander liability claim is denied.

3.  <u>Officers Oliveira and Provencher and Qualified Immunity for Constitutional Claims</u>

Oliveira and Provencher next move for summary judgment on Gilliam's federal and state constitutional claims on the grounds of qualified immunity.  Specifically, they argue that because it was objectively reasonable for them to believe that Oliveira's acts did not violate Gilliam's constitutional rights, they are both immune from liability.

Gilliam did not respond to Oliveira and Provencher's argument.

The qualified immunity doctrine shields "governmental officials performing discretionary functions" from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The initial inquiry should be whether taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). In making this inquiry, it should be determined whether it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u> at 202.

14

a. Fourth Amendment Claim

As discussed above, the Supreme Court established in <u>Graham</u> that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.  <u>Graham v. Connor</u>, 490 U.S. 386, 395, 397 (1989).  Therefore, if his version of the facts is accepted, Gilliam has a legally cognizable federal claim for the violation of his Fourth Amendment rights.  The only remaining inquiry is with respect to the reasonability of Oliveira and Provencher's conduct.  <u>Id.</u>

Based on the facts as Gilliam presents them, Oliveira and Provencher are not entitled to qualified immunity.  No reasonable officer would believe that Oliveira was unaware he was violating Gilliam's constitutional rights when, as alleged, he forcefully grabbed Gilliam, pushed him against the cruiser, intentionally injured him in the cruiser, and slammed him against the ground and the wall of the police station with no sign of resistance.  In addition, no reasonable officer would believe that Provencher was unaware that by failing to protect Gilliam from further abuse, as alleged, he was violating Gilliam's constitutional rights.  For the foregoing reasons, the defendants are not entitled to qualified immunity.

b. Article 1, Section 7 Connecticut Constitution Claim

The Connecticut supreme court has held that there is a cause of action for violations of § 7 of the Connecticut constitution.[1] Binnette v. Sabo, 244 Conn. 23, 47-48 (1998).  However, there is no Connecticut precedent establishing the same qualified immunity defense available under § 1983 for Connecticut constitutional violations.

Therefore, the defendants are not entitled to qualified immunity as a matter of law.

4.   Officer Oliveira and Assault and Battery

Oliveira next moves for a judgment as a matter of law with respect to Gilliam's assault and battery claims.  Oliveira argues that his use of force was reasonable and therefore justified under Connecticut law.

Gilliam responds that Oliveira's force was unreasonable because he did not resist in any way or try to escape at the time of his arrest.

Connecticut General Statutes § 53a-22 (2004) provides that "a peace officer . . . is justified in using physical force . . .

---

[1] Article 1, § 7, of the Connecticut constitution provides: The people shall be secure in their persons, houses, paper and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

when and to the extent that he reasonably believes such to be

necessary to . . . [e]ffect an arrest or prevent the escape from

custody . . . or . . . defend himself . . . from the use or

imminent use of physical force while effecting or attempting to

effect an arrest or while preventing or attempting to prevent an

escape."

As with Gilliam's excessive force claim, there are genuine

issues of material fact regarding the reasonableness of

Oliveira's use of force.

Therefore, Oliveira's motion for summary judgment on the

assault and battery claim is denied.

5.  <u>Officers Oliveira and Provencher and Intentional Infliction</u>
    <u>of Emotional Distress</u>

Oliveira and Provencher move for judgment as a matter of law

with respect to Gilliam's claim of intentional infliction of

emotional distress.  Specifically, they challenge Gilliam's

allegation that their acts or omissions were extreme and

outrageous.

Gilliam did not provide a response to Oliveira and

Provencher's arguments.

Liability for intentional infliction of emotional distress

requires that the plaintiff establish the following four

elements: (1) the defendant intended to inflict emotional

distress or that he knew or should have known that emotional

17

stress was the likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the emotional distress the plaintiff sustained was severe.  Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210, 757 A.2d 1059, 1062 (2000) (internal citation omitted).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. at 210-11, 757 A.2d at 1062 (internal quotations omitted).  Emotional distress is severe when "it reaches a level which no reasonable person could be expected to endure."  Sabir v. Jowett, 214 F. Supp. 2d 226, 243 (D. Conn. 2002) (internal quotations omitted).

Although the same issues of material fact appear here as it does with Gilliam's excessive force claim, Gilliam fails to furnish evidence to create a genuine issue of material fact to satisfy the last two elements of an intentional infliction of emotional distress claim.  There is no evidence to support that Oliveira and Provencher's acts or omissions were the cause of Gilliam's loss of sleep, apprehension, or undue mental and emotional distress.

There is also no evidence that his emotional distress was heightened or became more severe as a result of the incident.

The medical records indicate that Gilliam had been suffering from depression and anxiety for nine months prior to the incident, and there is no indication that Gilliam's condition worsened after the incident.  Further, Gilliam has not provided any evidence as to the permanency of the distress he claims Oliveira and Provencher caused, including explanations of his current condition or records of continuous or subsequent medical treatment.

Accordingly, the defendants' motion for judgment as a matter of law as to the intentional infliction of emotional distress claim is granted.

6.   <u>Officers Oliveira and Provencher and Negligent Infliction of Emotional Distress</u>

Oliveira and Provencher next move for judgment as a matter of law with respect to Gilliam's claim of negligent infliction of emotional distress.  Specifically, they argue that Gilliam has not demonstrated that there was an unreasonable risk of emotional distress or that he suffered any illness or bodily injury as a result of Oliveira's actions.

Gilliam did not respond to Oliveira and Provencher's arguments, but did claim that Oliveira's actions caused him bodily injury.

Connecticut law requires a plaintiff to prove that "the defendant should have realized that [his] conduct involved an

unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Carrol v. Allstate Ins. Co., 262 Conn. 433, 446, 815 A.2d 119, 128 (2003).

Although there may be genuine issues of material fact as to whether or not Oliveira and Provencher should have realized their acts or omissions involved an unreasonable risk of causing emotional distress, Gilliam has failed to provide sufficient evidence for a reasonable jury to find that Oliveira and Provencher caused him emotional distress above and beyond his current mental illness.

Therefore, the defendants' motion for summary judgment as to the negligent infliction of emotional distress claim is granted.

7.  <u>Governmental Immunity for State Law Claims</u>

Windsor Locks, Oliveira, and Provencher, move for judgment as a matter of law with respect to the state law claims, arguing that the claims are barred by governmental immunity. Specifically, the defendants argue that governmental immunity applies to the following counts: violation of Article I, § 7 of the Connecticut constitution, assault and battery, negligent assault, recklessness, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.

Gilliam did not respond to the defendants' argument.

Connecticut common law recognizes that "municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion." Elliott v. City of Waterbury, 245 Conn. 385, 411, 715 A.2d 27, 40 (1998). The immunity applies to discretionary acts, as opposed to "ministerial acts which [are] to be performed in a prescribed manner without the exercise of judgment or discretion." Id. (internal citations omitted). This is codified in Connecticut General Statutes § 52-557n(a)(2)(B) (2004), which provides:

> Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

The Connecticut supreme court has indicated that the "great weight of authority [holds] that the operation of a police department is a discretionary governmental function." Gordon v. Bridgeport Hous. Auth., 208 Conn. 161, 179, 544 A.2d 1185, 1195 (1988).

However, the immunity from liability is subject to three exceptions: (1) where the circumstances make it apparent to the municipal employee or agent that his or her failure to act would be likely to subject an identifiable person to imminent harm; (2) where a statute specifically provides for a cause of action against a municipality or its employees or agents for failure to

21

enforce certain laws; and (3) where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. Evon v. Andrews, 211 Conn. 501, 505, 559 A.2d 1131, 1134 (1989).

At the time of the incident, Oliveira and Provencher were involved in discretionary acts as police officers that would normally entitle them to governmental immunity under both common and statutory law.  However, there is a question as to whether the defendants' acts and omissions fall within the first or third exceptions to common law governmental immunity.  A jury could find, based on its determination of whether Oliveira used excessive force, that the circumstances made it apparent that Oliveira's acts or Provencher's failure to act would likely subject an identifiable person, namely Gilliam, to imminent harm. Further, it is a question for the jury as to whether or not malice or wantonness existed.

Therefore, the claims as to violations of the Connecticut constitution, assault and battery, negligent assault, recklessness, intentional infliction of emotional distress, and negligence are not barred by the doctrine of governmental immunity.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (document no. 36) is GRANTED in part and DENIED in part.

It is so ordered this 7th day of March, 2006 at Hartford, Connecticut.

/s/

_____

Alfred V. Covello
United States District Judge